UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Theodore J. Bolick, | ) | Civil Action No.: 5:21-cv-03800-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Bryan P. Stirling; Terry Wallace; Lieutenant | ) | |
| Sumter; Lieutenant Wright; Lieutenant | ) | |
| Robb; Gregory Forness; Kirkland Medical | ) | |
| Staff; Oluwakemi Babatunde; Cathy Grimes; | ) | |
| and Joyalyn Eskew; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, Theodore J. Bolick, currently incarcerated at Evans Correctional Institution in

Bennettsville, South Carolina and proceeding *pro se*, brought this action pursuant to 42 U.S.C. §

1983 alleging Defendants violated his constitutional rights. ECF Nos. 1 and 96.  Specifically,

Plaintiff alleged constitutional claims for (1) denial of out-of-cell exercise/recreation, (2) denial of

medical care, (3) placement in an overcrowded cell, and (4) illegal incarceration. *Id*.  The first three

claims involve Plaintiff's conditions of confinement while he was incarcerated at Kirkland

Reception and Evaluation Center ("Kirkland") within the South Carolina Department of

Corrections.[1]  Plaintiff's fourth claim relates to his current imprisonment for state burglary

convictions.

On May 23, 2022, the Court summarily dismissed Plaintiff's fourth claim (illegal

---

[1]        Kirkland receives, assesses, classifies, and assigns all male offenders age 17 and above sentenced
to 91 days or more. *See* https://www.doc.sc.gov/institutions/kirkland.html, last visited August 9, 2023.
According to the SC Department of Corrections website, Kirkland receives and processes approximately
8000 offenders each year and is also the site of the specialized housing unit where the most dangerous and
violent offenders are housed. *Id*.

incarceration claim) without prejudice finding that it was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). ECF No. 79.  On August 23, 2022, the Court denied Plaintiff's motion for reconsideration the summary dismissal of Plaintiff's fourth claim. ECF No. 135.  In its Order denying Plaintiff's motion for reconsideration, the Court reiterated that *Heck* barred a § 1983 claim "if a judgment in favor of the plaintiff must necessarily imply the invalidity of a plaintiff's conviction or sentence and the plaintiff is currently in custody." *Id*. citing *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 197 (4th Cir. 2015).  Plaintiff is currently incarcerated in the South Carolina Department of Corrections ("SCDC") for the burglary convictions he challenges in this case and, according to SCDC records, his projected release date is March 19, 2026. *See* https://public.doc.state.sc.us/scdc-public/inmateDetails.do?id=%2000384070, last visited August 9, 2023.

On October 12, 2022, Defendants moved for summary judgment. ECF No. 162.  Defendants filed an amended memorandum in support of summary judgment on October 13, 2023. ECF No. 166.  Plaintiff filed his response in opposition on October 27, 2022. ECF No. 171.  Defendants filed their reply on November 14, 2022. ECF No. 177.

On November 28, 2022, Plaintiff filed a motion for sanctions against defense counsel based on alleged "fraudulent falsehoods" asserted by defense counsel in Defendants' memoranda in support of their motion for summary judgment. ECF No. 178.  Also pending is Plaintiff's second motion to reconsider the summary dismissal of his fourth claim (illegal incarceration claim). ECF No. 187.

On May 24, 2023, United States Magistrate Judge Kaymani D. West filed a Report and Recommendation ("R&R") regarding Defendants' motion for summary judgment and Plaintiff's

2

motion for sanctions.[2]  The Magistrate Judge recommended that Defendants' motion for summary judgment be *granted* as to Plaintiff's denial of medical care/inadequate medical care claim and *denied* as to Plaintiff's conditions of confinement claims (denial of out of cell exercise and placement in an overcrowded cell) and recommended that Plaintiff's motion for sanctions be denied. ECF No. 185 at 9, 28.  Plaintiff and Defendants timely filed Objections to the Magistrate Judge's R&R on June 7, 2023. ECF Nos. 188, 189.  Plaintiff and Defendants each responded to the other's objections. ECF Nos. 193, 194.

### Standard of Review

The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The right to *de novo* review may be waived by the failure to file timely objections.  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations."  *Id.*  Moreover, in the absence of objections to the R & R, the Court is not required to give any explanation for adopting the recommendation.  *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).  However, in the absence of

---

[2]        This matter was referred to Magistrate Judge West pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B)(2).

objections, the Court must "'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions,

4

interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue

for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## Discussion

I.    <u>Defendants' Objections - Plaintiff's Conditions of Confinement Claims</u>

    The Magistrate Judge recommended denying Defendants' motion for summary judgment on

Plaintiff's Eighth Amendment conditions of confinement claims. Defendants timely filed objections

to the Magistrate Judge's report and recommendation. ECF No. 189. Plaintiff filed a reply to

Defendants' objections. ECF No. 194.

    Defendants' most persuasive objections are to the Magistrate Judge's recommendations on

qualified immunity and whether Defendants acted with deliberate indifference. The Court agrees

with the Defendants' objections and respectfully rejects the recommendations of the Magistrate

Judge on Plaintiff's conditions of confinement claims.

    Plaintiff's conditions of confinement claims are primarily that he was denied out-of-cell

exercise and recreation while incarcerated during the evaluation and classification process at

Kirkland Reception and Evaluation Center during the height of the COVID-19 pandemic. ECF No.

96-2 at 7-19. Specifically, Plaintiff was temporarily housed at Kirkland during his classification and

evaluation process from November 17, 2020 through February 11, 2021, then he was transferred to

another facility within the South Carolina Department of Corrections. ECF No. 162-3. Plaintiff

does not advance any complaints about the conditions of confinement at the institution he was sent

to after his transfer from Kirkland on February 11, 2021.

    Following some procedural issues with Plaintiff's state court conviction, which are not

relevant here, Plaintiff was transferred to a county facility. Plaintiff was transferred back to

Kirkland from June 15, 2021 through December 9, 2021 and went through the evaluation and classification process again. ECF No. 162-3.  On December 9, 2021, Plaintiff was transferred to another facility in the South Carolina Department of Corrections. *Id*.  Again, Plaintiff has advanced no claims concerning the conditions of his confinement since his transfer from Kirkland on December 9, 2021.

In his Request to Staff Member form at Kirkland, Plaintiff stated that overcrowding made in-cell exercise impractical because "it becomes almost impossible to exercise without creating a disturbance or causing conflict." ECF No. 96-2 at 31.  Plaintiff alleges he was placed in a three bunk cell with two other individuals and the cell had "less than 40 square feet of unencumbered space." *Id*. at 17.  On another occasion, Plaintiff alleges that he was moved from that cell and placed in another cell with two individuals and two bunks, and in this cell, Plaintiff was forced to sleep on a mat on the floor. *Id*. at 18, 69.

Plaintiff's incarceration is the result of two burglary convictions and his total sentence is 12 years, but according to the SCDC website, his projected release date indicates March 19, 2026. *See* https://public.doc.state.sc.us/scdc-public/inmateDetails.do?id=%2000384070, last visited August 9, 2023.

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials.... includ[ing] maintaining humane conditions of confinement." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).  To establish an Eighth Amendment violation, "a prisoner must prove (1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).  The subjective component of a

conditions-of-confinement claim requires a prisoner to show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994). Instead, deliberate indifference is most akin to criminal-law recklessness. *Campbell v. Florian*, 972 F.3d 385, 395 (4th Cir. 2020), as amended (Aug. 28, 2020). Further, so long as the official who knew of a substantial risk to inmate health or safety "responded reasonably to the risk," they cannot be found liable under the Eighth Amendment, "even if the harm ultimately was not averted." *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of a basic human need. *See Williams v. Branker*, 462 F. App'x 348, 353 (4th Cir. 2012) (*citing Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997)).

As the Magistrate Judge recognized, "[i]t *may* generally be considered that complete deprivation of exercise for an extended period of time violates Eighth Amendment prohibitions against cruel and unusual punishment." *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) (emphasis added). However, there can be exceptional circumstances where the general rule does not apply. *Mitchell*, 954 F.2d at 191. Other circuits have also noted that "[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, *without penological justification*, violates Eighth Amendment guarantees." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983) (emphasis added); see *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985). Although the cases in this area have generally established the constitutional necessity for some out-of-cell exercise, courts concede that penological considerations may, in certain circumstances, justify

7

restrictions. *Mitchell*, 954 F.2d at 192.  The undisputed penological justifications asserted by

Defendants, coupled with the COVID-19 pandemic, justify the restrictions in this case.

The Fourth Circuit has never held that denial of out-of-cell exercise opportunities is *per se*

unconstitutional cruel and unusual punishment, but has instead called for a totality of the

circumstances analysis on a case by case basis. *See, e.g. Mitchell*, 954 F.2d at 191.  "In considering

the totality of the circumstances" surrounding such denials, the court must "look at the 'overall

duration of incarceration, the length of time for which prisoners are locked in their cells each day,

and the practical opportunities for the institution to provide prisoners with increased exercise

opportunities.'" *Lyles v. Stirling*, 844 F. App'x 651, 653 (4th Cir. 2021) (unpublished) (*quoting*

*Mitchell*, 954 F.2d at 191).  "A restriction to two showers or exercise periods per week *might* not

violate 'the Eighth Amendment if confined to a relatively short period of maximum confinement,'

but if extended over a period of years and perhaps indefinitely, 'the rule *may* be quite different.'"

*Rivera v. Mathena*, 795 F. App'x 169, 174 (4th Cir. 2019) (emphasis added).

It is undisputed that all male inmates that enter the South Carolina Department of

Corrections system are processed through Kirkland for evaluation and classification before they are

sent to a long-term facility.  During Plaintiff's two separate stays at Kirkland during the evaluation

and classification process, Plaintiff was on "in-take" status until his classification could be

completed.  The warden of Kirkland provided an affidavit, which sets forth the critical penological

justification for denying out-of-cell exercise to inmates on "in-take" status. ECF No. 162-4.  The

warden stated that:

> *For inmates who have not yet been classified and assigned to an*
> *institution, out-of-cell recreation in a traditional recreation yard*
> *presents serious potential security risks*.  For instance, inmates with

8

> certain convictions may be preyed upon by other inmates in an open
> recreation setting.  Also, inmates with rival gang affiliations could
> inadvertently be mixed up when the classification process has not been
> completed.

*Id*. (emphasis added).  The warden's affidavit sets forth a very real concern among prison officials, especially in light of the potential liability if a prison official or corrections officer fails to adequately protect an inmate from violence inflicted by another inmate. *See, e.g. Farmer v. Brennan*, 114 S. Ct. 1970, 1976 (1994) ("prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners").  It also undisputed that Plaintiff was temporarily housed at Kirkland during the height of the COVID-19 pandemic, which forced many institutions to take measures to try to mitigate the spread of the disease. *Id*.

The length of Plaintiff's stay was temporary and relatively short compared to his overall duration of incarceration.  Indeed, now that Plaintiff has been classified and placed in a permanent facility, his complaints about being denied out of cell exercise have ceased.  The declarations, affidavits, prison grievance records, and medical records submitted by the parties demonstrate that, while Defendants did not grant Plaintiff's request for out-of-cell exercise, they reasonably responded to his complaints of the physical and mental injuries he alleges he suffered as a result of being denied out of cell exercise. ECF Nos. 162-5 at 8, 10; 162-12 at 2; 162-13 at 4-5; 162-16 at 2-3; 162-17 at 4-5, 12-14, 22-23; 162-19; 162-20; *See Pfaller*, 55 F.4th at 445 ("so long as the official who knew of a substantial risk to inmate health or safety 'responded reasonably to the risk,' they cannot be found liable under the Eighth Amendment, 'even if the harm ultimately was not averted.'") (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).  There is no case law to support the notion that

reasonably responding to a prisoner's complaints requires the prison official to grant the prisoner's specific request or comply with his specific demands.

Plaintiff's medical records indicate that when he reported to medical with complaints of "bed sores" on November 17, 2021, Plaintiff's backside did not show "bed sores," but a small red bump to the back of his right upper thigh. ECF No. 162-13 at 5. The nurse noted that Plaintiff's skin was intact and provided Plaintiff with packets of hydrocortisone cream for the bump. *Id*. When Plaintiff presented to medical with complaints of mental health injuries resulting from the denial of out-of-cell exercise, Plaintiff was seen by a mental health professional, diagnosed with major depressive disorder and personality disorder. ECF No. 162-17 at 4. Plaintiff was prescribed Cymbalta for his depression and Doxepin for his anxiety. *Id*. The doctor noted that both medications provided an added benefit for neuropathic pain. *Id*. Defendants also provided Plaintiff with instructions for an in-cell exercise program. ECF No. 162-4.

Plaintiff submitted several sworn declarations of other individuals incarcerated with him at Kirkland who were also on "in-take" status. *See* ECF Nos. 171-2; 171-3; 171-4. Taking these declarations in the light most favorable to Plaintiff, they do not establish deliberate indifference to Plaintiff's conditions of confinement. Rather, the declarations suggest that Plaintiff was not specifically targeted but treated the same way as other inmates on "in-take" status. Plaintiff has failed to offer sufficient evidence to create a question of fact that he was targeted or that his classification and assignment to a permanent facility was unnecessarily delayed, or that there was any deliberate indifference to his alleged suffering.

In light of the penological justifications, complicated by the height of the COVID-19 pandemic, and Defendants' reasonable responses to Plaintiff's complaints of injuries resulting from

the denial of out of cell exercise, Plaintiff has failed to establish a question of fact as to whether Defendants were deliberately indifferent to his request for out-of-cell exercise and that the in-cell exercise program was made impractical by overcrowded cells.[3]

This case is distinguishable from *Lyles v. Stirling*, 844 Fed. Appx. 651 (4th Cir. 2021), where the Fourth Circuit remanded a case involving an inmate deprived of out of cell exercise for a 10 month period and permitted one shower per week.  In *Lyles*, the prison did not appear to make any effort to address that plaintiff's physical or mental complaints unlike the prison officials did in this case.  *Lyles* was permitted only one shower per week and, most importantly, was not on in-take status at Kirkland Reception and Evaluation center, at the height of the COVID-19 pandemic, during the period he was denied out-of-cell exercise.  Finally, the defendants in *Lyles* did not advance the same penological justifications that are at play for an inmate on in-take status.  Plaintiff cannot reasonably dispute that his complaints were not addressed.  They were, in fact, addressed, just not in the manner Plaintiff wished.

Defendants were clearly aware of Plaintiff's requests for out-of-cell exercise and his alleged related injuries, but there is no evidence that Defendants could have altered a prison-wide policy for inmates on "in-take" status simply for Plaintiff, especially when that policy was driven by undisputed safety concerns, not deliberate indifference to an inmate's need for out-of-cell exercise.

Defendants' denial of Plaintiff's request for out-of-cell exercise during his temporary stay at

---

[3]    At this point, it is necessary to note that Plaintiff does not complain of any serious illness or injury solely as a result of over-crowded cells.  Rather, his complaints about over-crowding are related to his argument that in-cell exercise was impractical due to space limitations.  Thus, the Court concludes that Plaintiff has not asserted a free-standing "over-crowding" conditions of confinement claim.  To the extent Plaintiff has asserted a free-standing "over-crowding" claim, his claim fails because he has not submitted sufficient evidence to create a genuine issue of material fact that the over-crowding situation was sufficiently serious in order to sustain an Eighth Amendment claim. *See De'lonta*, 708 F.3d at 525.

Kirkland does not create a question of fact as to whether they were deliberately indifferent. The undisputed record demonstrates that Defendants treated each and every one of Plaintiff's physical and mental complaints. In fact, Plaintiff obtained medical treatment faster than most individuals who are not incarcerated. Plaintiff wanted a special exception even though the record shows that he was treated the same as every other Kirkland inmate on "in-take" status. It also cannot be ignored that Plaintiff's "in-take" status and incarceration at Kirkland were temporary and made up a relatively small percentage of his overall sentence.

Plaintiff's allegations that his medical records were falsified are baseless and pure speculation, which is insufficient to overcome summary judgment. Sometimes, a non-movant's self serving affidavit, without more, will be insufficient to create a question of fact and overcome summary judgment, and other times it will be enough. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017); *Compare Coffey v. Chem. Specialties, Inc.*, No. 92-2397, 1993 WL 318886 at *3 (4th Cir. Aug. 20, 1993) (finding plaintiff's "self serving testimony" to be "utterly lacking in foundation" and thus failing to establish a genuine issue of material fact), *with Harris v. Mayor & City Council of Balt.*, 429 Fed.Appx. 195, 198 n.5, 203 (4th Cir. 2011) (concluding that summary judgment was inappropriate, in part because of evidence from non-movant's affidavit). In the present case, Plaintiff's self-serving affidavits and declarations, which essentially assert that everyone is lying and there is a vast conspiracy against him, without more, are insufficient to create any genuine issue of material fact essential to overcome summary judgment. Defendants' refusal to create a special exception for Plaintiff to have out-of-cell exercise does not create a question of fact on the issue of deliberate indifference. Accordingly, Plaintiff has

12

failed to submit evidence sufficient to create a question of fact on the subjective component of his Eighth Amendment conditions of confinement claim.

The Court cannot ignore the special circumstances that exist at Kirkland Reception and Evaluation Center. Kirkland receives, assesses, classifies, and assigns all male offenders age 17 and above sentenced to 91 days or more. *See* https://www.doc.sc.gov/institutions/kirkland.html, last visited August 7, 2023. According to the SC Department of Corrections website, Kirkland receives and processes approximately 8000 offenders each year and is also the site of the specialized housing unit where the most dangerous and violent offenders are housed. *Id*.

Defendant Terry Wallace noted in her affidavit in support of Defendants' motion for summary judgment that, at Kirkland, "for inmates who have not yet been classified and assigned to an institution, out-of-cell recreation in a traditional recreation yard presents serious potential security risks." ECF No. 164-2 at 2-3. Defendant Wallace further stated that inmates with certain convictions may be preyed upon by other inmates in an open recreation setting and inmates with rival gang affiliations could inadvertently be mixed when the classification process has not been completed. *Id*. at 3. Unlike other plaintiffs who have challenged a denial of out-of-cell exercise, Plaintiff in this case was housed *temporarily* in a Reception and Evaluation Center as he was processed through the South Carolina Department of Corrections, which is a significant distinction. Plaintiff was not deprived of out-of-cell exercise indefinitely or for a period of years. Moreover, the penological justifications set forth by the Defendants more than justify the limited period during which Plaintiff was denied out-of-cell exercise. Plaintiff's disagreement with Defendants' penological justifications is insufficient to overcome summary judgment on his conditions of confinement claim.

13

The penological justifications for the denial of out-of-cell exercise were for the Plaintiff's own safety.  The Magistrate Judge recognized in the R&R that "Defendants have established that the restriction on out-of-cell exercise was necessary for both safety concerns during the in-take process and nature of R&E." R&R, ECF No. 185 at 17.  Prison officials knew that Plaintiff's in-take status was temporary, as it was with all inmates with Plaintiff's classification, and reasonably responded to Plaintiff's physical and mental injuries that allegedly arose from the result of the denial of out-of-cell exercise and provided in-cell exercise program instructions.  Plaintiff's denial of out of cell exercise was relatively short given the length of his total sentence.  There is nothing in the record to conclude that Plaintiff was targeted in particular or that he was treated any differently than any other inmate on "in-take" status at Kirkland.

Considering the alternative, had Defendants permitted out-of-cell exercise to Plaintiff and every other inmate on "in-take" status at the Kirkland Reception and Evaluation Center, it is likely that Kirkland could be defending a different set of § 1983 lawsuits based on an alleged failure to protect.  Defendants had valid, legitimate penological reasons for their actions, far from being deliberately indifferent.

Because Plaintiff has failed to create a genuine issue of material fact that his Eighth Amendment rights were violated based on his conditions of confinement, Defendants are entitled to summary judgment on Plaintiff's conditions of confinement claims, contrary to the Magistrate Judge's recommendation.

Defendants are also entitled to qualified immunity on Plaintiff's conditions of confinement claims.  Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have

14

violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *Tobey v. Jones*, 706 F.3d 379, 385.

To determine whether an officer is entitled to qualified immunity, the court must examine: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation." *Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (finding that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

Here, Plaintiff has failed to establish that a constitutional violation occurred. Specifically, Plaintiff failed to establish a genuine issue of material fact that Defendants were deliberately indifferent to his conditions of confinement. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's conditions of confinement claims.

For those reasons, this Court concludes that Defendants are entitled to summary judgment on Plaintiff's conditions of confinement claims.

II.    Plaintiff's Objections - Claims against Defendants Stirling, Furness, Grimes, Eskew and Wallace

The Magistrate Judge recommended granting Defendants' motion for summary judgment on Plaintiff's Eighth Amendment denial of medical care/inadequate medical care claim as to Defendants Wallace, Furness, Babatunde,[4] Grimes, and Eskew. The Magistrate Judge also recommended granting summary judgment as to Defendant Stirling on all of Plaintiff's claims.

---

[4]    Plaintiff conceded that he did not intend to identify Babtunde as a defendant in this case and therefore Babatunde is entitled to be dismissed from this lawsuit. ECF No. 171-5 at 24.

Plaintiff timely filed objections to the Magistrate Judge's recommendation and Defendants filed a response to Plaintiff's objections.

      a.    <u>Defendant Stirling</u>

Plaintiff first objects to the dismissal of Defendant Stirling, Director of the South Carolina Department of Corrections, arguing that Stirling knew or reasonably should have known of widespread cruel and unusual punishment that prisoners were being kept in their cells twenty-four hours a day and that he failed to do anything to remedy it. Plaintiff cites *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and *Spell v. McDaniel*, 824 F.2d 1380, 1384 (4th Cir. 1987) for the proposition that Defendant Stirling is liable.

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).

To the extent Plaintiff has sued Defendant Stirling in his official capacity as Director of the South Carolina Department of Corrections, or any Defendant in their official capacity for that matter, the Court agrees with the Magistrate Judge that Defendants are entitled to immunity under the Eleventh Amendment as to any claims brought against them in their official capacity. *See Cash*

*v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001).  Further, to the extent Plaintiff sued Defendant Stirling in his individual capacity, the Court also agrees with the Magistrate Judge.

Section 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must establish that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to...the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

17

Plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact that Defendant Stirling had any personal involvement in his conditions of confinement or that Defendant Stirling had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff. Plaintiff acknowledges that the letters he wrote to Defendant Stirling were returned to him. ECF No. 188 at 3. However, beyond that, Plaintiff has not set forth sufficient evidence to create a question of fact that Defendant Stirling had any personal involvement in, or knowledge of, Plaintiff's conditions of confinement. Viewing the evidence in the light most favorable to Plaintiff, there is insufficient evidence in the record to create a question of fact as to whether Defendant Stirling was personally involved in Plaintiff's conditions of confinement or had actual or constructive knowledge of Plaintiff's complaints about being denied out-of-cell exercise or inadequate medical care. Defendant Stirling is, therefore, entitled to summary judgment as to all of Plaintiff's claims.

      b.    <u>Defendants Furness, Grimes, Eskew, and Wallace</u>

As to Defendants Furness, Grimes, Eskew, and Wallace, the only remaining claim is Plaintiff's Eighth Amendment denial of adequate medical care claim.

"A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (internal quotation marks omitted).

A claim of inadequate medical care has both a subjective and objective element; "[t]he plaintiff must demonstrate that the [defendant] acted with deliberate indifference (subjective) to the

inmate's serious medical needs (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An inmate alleging deliberate indifference must establish that his medical condition was objectively serious—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (internal quotation marks omitted). The inmate also must establish the subjective element, namely that the official subjectively knew of and disregarded an excessive risk to the inmate's health or safety. *Jackson*, 775 F.3d at 178.

Once prison officials are aware of a serious medical need, they only need to "respond[ ] reasonably to the risk." *Farmer v. Brennan*, 511 U.S. 825, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Disagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Hixson v. Moran*, 1 F.4th 297, 302-03 (4th Cir. 2021). Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970; *Hixson*, 1 F.4th at 303. To find the prison officials liable, the treatment given must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixson*, 1 F.4th at 302-03; *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Plaintiff's objections are not specifically related to a claim of deliberate indifference to a serious medical need but tie back to Plaintiff's claim that he was denied "the ability to move around, exercise, or sunlight," i.e, out-of-cell exercise. For instance, Plaintiff alleges Defendant Eskew "could have issued the Plaintiff an out-of-cell or outside exercise pass." ECF No. 188 at 7. In other

words, Plaintiff's primary complaint is not that any "serious medical need" was met with deliberate indifference, but that he did not receive a medical pass for out-of-cell exercise.

A review of Plaintiff's medical records while housed at Kirkland indicate that he was seen in medical on multiple occasions and received reasonable treatment on each occasion. Plaintiff has failed to establish sufficient evidence to create a genuine issue of material fact that the medical treatment he received at Kirkland was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Hixson*, 1 F.4th at 303.

The Court agrees with the Magistrate Judge that Plaintiff has failed to establish that Defendants were deliberately indifferent to a serious medical need. Defendants responded reasonably to Defendants' complaints of physical and mental injuries while at Kirkland. Again, Plaintiff's baseless allegation that Defendants destroyed and ignored Plaintiff's sick call requests is insufficient to create a question of fact as to whether Defendants were deliberately indifferent to his serious medical needs.

Viewing the evidence in the light most favorable to the Plaintiff, specifically the declarations submitted by Plaintiff in response to Defendants' motion for summary judgment, *see* ECF Nos. 171-1 through 171-5, there is insufficient evidence to create a question of fact that Defendants were deliberately indifferent to any serious medical of Plaintiff. Plaintiff wanted a medical pass for out-of-cell exercise while he was temporarily housed at Kirkland while on in-take status. His physical and mental ailments were treated, but not with an out-of-cell exercise pass. Mere disagreement with a prison official's response to an alleged serious medical need is not actionable under the Eighth Amendment without exceptional circumstances, which are not present here. *See Hixson*, 1 F.4th at 302-303.

Defendants Furness, Grimes, Eskew, and Wallace are entitled to summary judgment on Plaintiff's Eighth Amendment denial of adequate medical care claim. The Court also finds that Defendants Furness, Grimes, Eskew, and Wallace would be entitled to qualified immunity on Plaintiff's denial of adequate medical care claim as Plaintiff did not establish a question of fact as to whether a constitutional violation occurred with respect to his medical care. *See Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) (To determine whether an officer is entitled to qualified immunity, the court must examine: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation.").

III.    Motion for Sanctions

Plaintiff did not object to the Magistrate Judge's recommendation that his motion for sanctions against defense counsel be denied. Finding no clear error, this Court agrees with the Magistrate Judge that Plaintiff's motion for sanctions against defense counsel be denied.

IV.    Motion for Reconsideration

Plaintiff has moved to reconsider the summary dismissal of his illegal incarceration claim, which was summarily dismissed without prejudice as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), in an order dated May 23, 2022.

The Court considers Plaintiff's motion for reconsideration under Fed. R. Civ. P. 54(b) given the interlocutory nature of the May 23, 2022 order. *See Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) ("A district court has discretion to revise an order 'that adjudicates fewer than all the claims' in an action 'at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" (quoting Rule 54(b)). A court may revise an interlocutory order based on "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law;

21

or (3) clear error causing manifest injustice." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018). "[T]he discretion Rule 54(b) provides is not limitless," and "courts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

Plaintiff contends that the Court should reconsider its May 23, 2022 order based on a statement or admission by the State in its final brief on Plaintiff's direct appeal from his criminal conviction and sentence, which is still pending. The Court has reviewed the State's final brief and the South Carolina Court of Appeals docket. Because Plaintiff's direct appeal is still pending and he remains incarcerated, his illegal incarceration claim remains barred under *Heck v. Humphrey*, although such dismissal is without prejudice.

Plaintiff's motion to reconsider is denied.

### Conclusion

Having reviewed the record and applicable law, the Court respectfully adopts in part and rejects in part the recommendations of the Magistrate Judge.

Specifically, the Court overrules Plaintiff's objections to the R&R and adopts and incorporates the portion of the R&R that recommends granting Defendants' motion for summary judgment on Plaintiff's Eighth Amendment denial of medical care claim. As to Plaintiff's conditions of confinement claim, the Court sustains Defendants' objections to the R&R as to the Magistrate Judge's findings on deliberate indifference and qualified immunity and respectfully rejects the portion of the R&R that recommends denying Defendants' motion for summary judgment on Plaintiff's Eighth Amendment conditions of confinement claim.

Accordingly, Defendants' motion for summary judgment is **GRANTED** and the Plaintiff's Eighth Amendment claims brought under 42 U.S.C. § 1983 (denial of medical care and conditions of confinement) are hereby **DISMISSED with prejudice.**

Plaintiff's motion for sanctions is **DENIED** and Plaintiff's motion to reconsider the summary dismissal of his alleged illegal incarceration claim is also **DENIED**. Plaintiff's motion to correct his objections to the Report and Recommendation is **GRANTED**.

**IT IS SO ORDERED.**

August 21, 2023                                        s/ R. Bryan Harwell
Florence, South Carolina                          R. Bryan Harwell
                                                              United States District Judge

23